UNITED STATES of America,
Plaintiff–Appellee,

v.

Douglas Floyd OSBORNE, Jr.,
Defendant–Appellant.

No. 90–5691.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 4, 1991.

Decided May 28, 1991.

As Amended June 21, 1991.

As Amended July 17, 1991.

As Amended Aug. 12, 1991.

Anthony W. Harrison, Sr., argued, Harrison, North, Cooke & Landreth (Susan Hayes, on brief), Greensboro, N.C., for defendant-appellant.

Lisa Blue Boggs, Asst. U.S. Atty., argued (Robert H. Edmunds, Jr., U.S. Atty., on brief), Greensboro, N.C., for plaintiff-appellee.

Before ERVIN, Chief Judge, WILKINSON, Circuit Judge, and SMITH, District Judge for the Eastern District of Virginia, sitting by designation.

ERVIN, Chief Judge:

This appeal arises out of alleged government entrapment in connection with a child pornography sting operation. We are presented with the question of whether the district court may properly rule prior to trial that no entrapment existed as a matter of law, thus preventing the defendant from presenting evidence at trial on the defense of entrapment. We hold that, although pretrial resolution of an entrapment motion is rarely appropriate, on the facts of this case the district court did not err in refusing to allow the issue of entrapment to go before the jury. Accordingly, we affirm the conviction and sentence.

### I.

In the early summer of 1989, Perry L. LePere, a United States Postal Inspector in Nashville, Tennessee, placed an advertisement in a publication entitled "A & B Video." The ad read: "BR–1001 TN. will convert 8 mm to video. Also will buy, sell or trade for bizarre videos (B/D, S/M, Young Girls, etc.) T.Y. P.O. Box 22404, Nashville, TN 37202–2404." In response to this ad, Inspector LePere received a letter postmarked July 3, 1989 from Floyd Osborne, Jr., indicating his interest in purchasing "XXX young girl (teenagers) videos." LePere then mailed Osborne a cover letter, questionnaire, and printed sheet identifying available film services. Osborne completed the questionnaire and returned it.[1] On the questionnaire Osborne noted that he had a special interest in explicit material featuring teenaged girls ages 13–17. A handwritten note attached to the questionnaire gave an address in Eden, N.C. to be used for UPS delivery purposes, "to prevent government snooping." Upon receipt of the questionnaire, LePere mailed Osborne a cover letter and video catalog which offered five adult and five child pornographic videos for sale.

Subsequently, LePere received a completed order form from Osborne requesting two child pornographic videos, accompanied by Osborne's personal check for the purchase amount. LePere had the videos prepared and arranged for a federal search warrant and a controlled delivery of the two tapes to the address in Eden, North Carolina that Osborne had designated. At the time the package was delivered to Osborne's residence Osborne was not at home, so his brother Albert received the package.

Officers subsequently executed the federal search warrant and recovered the videotapes from Osborne's residence. The package containing the tapes was found sealed up with other mail addressed to Floyd Osborne. Albert Osborne testified that he had left this package for "previewing" by his brother, and that he himself knew nothing of the package's contents.[2]

---

**1.** The questionnaire was styled as a membership application for the Special Circle of Friends (SCF), a group of persons with "freethinking" attitudes to whom videos would be sent. It featured a number of statements relating to sexual issues, to which the applicant could respond with approval or disapproval. The questionnaire also provided an option by which the recipient who was not interested in joining SCF could instruct that his name be removed from SCF's mailing list.

**2.** Osborne argued on appeal that the district court erred in denying his motion to dismiss on the grounds that, because he was not at home when the videotapes were delivered, he could not have "knowingly received" them as required by 18 U.S.C. § 2252(a)(2). This argument is meritless. The statutory provision Osborne cites was intended to protect persons who have received child pornography by mistake; unlike such persons, Osborne knew exactly what he ordered, and affirmatively acted to have the materials delivered to his residence. In this Circuit we adhere to a definition of "knowing receipt" which accords with the common-sense understanding of the term. *See United States v. Flippen,* No. 88–5041, slip op. at 5 (4th Cir. Sept. 26, 1988) [861 F.2d 266 (table) ]; *see also United States v. Stanley,* 896 F.2d 450, 451 (10th Cir. 1990).

The district court's instruction to the jury was consistent with a plain-meaning understanding of Section 2252(a)(2), as well as with the principle of constructive receipt. Osborne was deemed to have constructive possession of the videotapes upon their delivery to his residence, the point at which he achieved the power to exercise dominion and control over them. *United States v. Laughman,* 618 F.2d 1067, 1077 (4th Cir.), *cert. denied,* 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980).

■ Osborne was arrested and indicted in the Middle District of North Carolina on charges that he had knowingly received and caused to be received two videotapes of minors engaged in sexually explicit conduct as defined by 18 U.S.C. § 2256, and that the videotapes had been shipped in interstate commerce, all in violation of 18 U.S.C. § 2252(a)(2). Osborne stipulated that the two videotapes he ordered were video films which visually depicted minors engaging in sexually explicit conduct; that these were the tapes he ordered; and that they were transported in interstate commerce. Nevertheless, Osborne pled not guilty to these charges and filed a pretrial motion to dismiss the indictment on the grounds that the government had engaged in entrapment and in outrageous conduct violative of his rights to due process of law.

The district court denied Osborne's motion, ruling as a matter of law that the government's conduct had not been sufficiently outrageous to deprive Osborne of his due process right. Further, the court found that Osborne's ready response to the government's solicitation indicated a level of predisposition toward the crime charged which rendered the defense of entrapment unavailable to him at trial.

The trial proceeded, and the jury found Osborne guilty as charged. At the sentencing hearing, the district court applied the federal Sentencing Guidelines to determine Osborne's sentencing range and refused to depart downward on the grounds of outrageous government conduct.[3] Noting that Osborne had no previous arrests or convictions for any similar offense, the court sentenced Osborne to the lowest end of the guideline range: 12 months' imprisonment, a $3000 fine, and 3 years' supervised release including 375 hours of community service. Osborne then filed this appeal.

**3.** On appeal, Osborne challenged the district court's refusal to depart downward. Under our recent precedent, this challenge must fail. We have held that unless a district court's decision not to depart downward under the federal Sentencing Guidelines was based on the court's

II.

Osborne's appeal of his conviction is primarily based on the district court's pretrial denial of two defenses: the constitutional defense of outrageous government conduct, and the statutory defense of entrapment. In his pretrial motion to dismiss the indictment, Osborne alleged that the government's conduct in placing the advertisement and conducting the sting operation to uncover violations of 18 U.S.C. § 2252(a)(2) was so outrageous as to have violated his fifth amendment right to due process of law, and that this conduct induced him to violate the law and thus constituted entrapment. We review the district court's decision to resolve these issues prior to trial *de novo* for constitutional error and for abuse of discretion. *United States v. Ortiz*, 804 F.2d 1161, 1164 (10th Cir.1986).

### Due Process Claim

■ Osborne's due process argument has two prongs. First, Osborne contends that constitutional norms of due process require that the government demonstrate that it had a reasonable suspicion of wrongdoing on his part before it began the undercover investigation. For this constitutional principle Osborne relies on *United States v. Luttrell*, 889 F.2d 806, 813 (9th Cir.1989), *en banc reh'g granted*, 906 F.2d 1384 (9th Cir.1990), in which the Ninth Circuit Court of Appeals held that constitutional norms are violated when, without reasoned grounds, officers approach apparently innocent individuals and provide them with a specific opportunity to engage in criminal conduct. The Ninth Circuit, however, is the only appellate jurisdiction so far to have so ruled. *Cf. United States v. Jacobson*, 916 F.2d 467 (8th Cir.1990) (en

mistaken view that it lacked the authority to depart, the decision is an unappealable exercise of discretion. *United States v. Bayerle*, 898 F.2d 28, 31 (4th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 65, 112 L.Ed.2d 39 (1990). Here, the dis-

banc);[4] *United States v. Jenrette*, 744 F.2d 817 (D.C.Cir.1984), *cert. denied*, 471 U.S. 1099, 105 S.Ct. 2321, 85 L.Ed.2d 840 (1985); *United States v. Gamble*, 737 F.2d 853 (10th Cir.1984); *United States v. Thoma*, 726 F.2d 1191 (7th Cir.), *cert. denied*, 467 U.S. 1228, 104 S.Ct. 2683, 81 L.Ed.2d 878 (1984); *United States v. Jannotti*, 673 F.2d 578 (3d Cir.) (en banc), *cert. denied*, 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982); *United States v. Myers*, 635 F.2d 932 (2d Cir.), *cert. denied*, 449 U.S. 956, 101 S.Ct. 364, 66 L.Ed.2d 221 (1980). In this Circuit the contrary principle has been fixed in the law for almost 70 years, *Newman v. United States*, 299 F. 128 (4th Cir.1924), and is still viable. *United States v. DeVore*, 423 F.2d 1069 (4th Cir.1970), *cert. denied*, 402 U.S. 950, 91 S.Ct. 1604, 29 L.Ed.2d 119 (1971); *United States v. Velasquez*, 802 F.2d 104 (4th Cir.1986) (both holding that the government need not have reasonable grounds to suspect illegal conduct before offering the opportunity to commit a crime).

Moreover, *Luttrell's* holding was developed in the context of a case in which the government agent targeted the specific defendant and contacted him personally to offer him the inducement to commit a particular crime. *Luttrell, supra,* 889 F.2d at 808. The government even persevered with the agreed-upon scheme after the defendant stated that he wanted to cancel the deal. *Id.* at 809.[5] In Osborne's case, there was no personal solicitation by the government. In responding to the instructions it received from Osborne, the government moreover provided him at each stage with opportunities to withdraw from his course of action. Yet, even in a *Luttrell*-like situation, we have held that the provision of an opportunity to commit a crime is merely solicitation incapable of inducing an otherwise innocent person to commit the crime. *Velasquez, supra,* 802 F.2d at 106.

 Osborne next asserts that, whether or not he was predisposed to commit the crime at issue, the government's conduct was so outrageous that it violated his right to due process of law. In order to constitute a due process violation, the government's conduct must be so outrageous as to shock the conscience of the court. *Jacobson, supra,* 916 F.2d at 469 (citing *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952)). Government conduct is not outrageous simply because it may be somewhat offensive. *United States v. Goodwin*, 854 F.2d 33, 37 (4th Cir.1988). Since the appellate courts have over time continued to demonstrate a high shock threshold in the presence of extremely unsavory government conduct, Osborne's characterization of the government's conduct in this case is bound to fail. *See, e.g., United States v. Simpson*, 813 F.2d 1462 (9th Cir.1987) (FBI manipulated woman into providing sexual favors to a targeted person in order to lure him into selling heroin to undercover agents).

In the most recent appellate case involving a defendant who had been convicted for receiving child pornography through the mails in violation of 18 U.S.C. § 2252(a)(2), the Eighth Circuit Court of Appeals, sitting *en banc*, vacated the earlier panel decision, 893 F.2d 999 (8th Cir.1990), and held that the government's action did not rise to the level of outrageousness necessary to constitute a due process violation. *Jacobson, supra,* 916 F.2d at 470. The court's conscience remained undisturbed even though the government agents had specifically targeted the defendant on the basis of the presence of his name on an adult nudist magazine subscription list, and had pursued the defendant by means of no fewer than five sting operations until he finally

---

trict court recognized its authority to depart before refusing to do so.

**4.** At the time of the writing of this opinion, the United States Supreme Court has granted certiorari to consider one issue in *Jacobson*. —— U.S. ——, 111 S.Ct. 1618, 113 L.Ed.2d 716 (1991).

**5.** The Court of Appeals in *Luttrell* did not reverse the defendants' convictions, but remanded because the district court's summary dismissal of defendants' outrageous conduct motion had prevented full development of the record. On remand, the district court was ordered to determine whether the government had reasoned grounds for initiating the undercover scheme. 889 F.2d at 814.

ordered a magazine depicting minors. The *Jacobson* court noted that the postal inspectors applied no extraordinary pressure on the defendant. The inspectors merely invited him to purchase pornographic material through the mail, and since they did not contact him face-to-face he could easily have ignored the contents of the mailings. 916 F.2d at 470. *See also United States v. Musslyn*, 865 F.2d 945 (8th Cir.1989) (in conducting child pornography sting operation, government's conduct was not outrageous, although government initiated mail contact with defendant and followed up with personal contact involving tape recording of defendant's conversation).

This Circuit has also recently addressed the issue of outrageousness in the context of a child pornography sting operation. In *United States v. Goodwin*, 854 F.2d 33 (4th Cir.1988), the government identified its targets by answering advertisements apparently seeking child pornography and by using lists transmitted by the Customs Service of the names of persons to whom such material had been sent from overseas and subsequently seized. As in the present case, subsequent test correspondence was sent to confirm predisposition, followed by a catalog and order form. 854 F.2d at 34. In affirming the district court's determination that the government's conduct was not violative of Goodwin's due process rights, we emphasized that "outrageous" is not a label properly applied to conduct just because it is a sting operation. 854 F.2d at 37 (citing *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976)). We stated that the due process calculation must take into consideration the nature of the crime involved, noting that undercover operations provide a means by which participants in the clandestine child pornography industry can be detected. 854 F.2d at 37. Like the *Jacobson* court, we observed that at no point had there been personal contact between the defendant

and the postal inspectors. In conclusion, we held that the sting operation was "neither shocking nor offensive to traditional notions of fundamental fairness." *Id.*

Given the abundant and lenient appellate precedent concerning constitutionally permissible government conduct in undercover operations, it is clear that the government's conduct in the sting operation involving Osborne is far from outrageous by constitutional standards. The district court thus properly determined as a matter of law that Osborne's motion to dismiss the indictment on constitutional grounds must be denied.

### Entrapment Claim

■ Unlike the constitutional defense of outrageous government conduct, where the focus is on the action taken by the government, the statutory defense of entrapment centers inquiry on the issue of the defendant's predisposition to commit the crime in question. It is settled law that the government may provide the opportunities or facilities for the commission of an offense by one otherwise predisposed to criminal activity. *DeVore, supra*, 423 F.2d at 1070 (citations omitted). Thus, if the defendant's predisposition is established, the defense of entrapment may not be based on government misconduct. *United States v. Akinseye*, 802 F.2d 740, 744 (4th Cir.1986).[6]

■ "Predisposition" refers to the defendant's state of mind before government agents make any suggestion that he shall commit a crime. However, a finding of specific prior contemplation of criminal conduct is not required in order to determine that the defendant was predisposed. *United States v. Hunt*, 749 F.2d 1078, 1085 (4th Cir.1984), *cert. denied*, 472 U.S. 1018, 105 S.Ct. 3479, 87 L.Ed.2d 614 (1985). Thus, contrary to Osborne's contention, the fact that a defendant has not previously com-

**6.** The Supreme Court has repeatedly rejected the "objective" view of entrapment, which requires dismissal of any charge involving "impermissible government action" regardless of a lack of evidence concerning the defendant's predisposition. The Court has maintained that predisposition is "the principal element in the defense of

entrapment." *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988) (quoting *United States v. Russell*, 411 U.S. 423, 433, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973)); *see also Sherman v. United States*, 356 U.S. 369, 372–73, 78 S.Ct. 819, 820–21, 2 L.Ed.2d 848 (1968).

mitted any related crime is not proof of lack of predisposition. *Akinseye, supra,* 802 F.2d at 744. Rather, predisposition is found from the defendant's ready response to the inducement offered. It is sufficient if the defendant is of a frame of mind such that, once his attention is called to the criminal opportunity, his decision to commit the crime is the product of his own preference and not the product of government persuasion. *Hunt, supra,* 749 F.2d at 1085. In summary, an entrapment claim can only prevail where "the Government's deception actually implants the criminal design in the mind of the defendant." *Id.* (quoting *United States v. Russell,* 411 U.S. 423, 436, 93 S.Ct. 1637, 1645, 36 L.Ed.2d 366 (1973)).

■ Entrapment is an affirmative defense and the initial burden is on the defendant to go forward with evidence beyond a mere scintilla that the government induced him to commit an offense he was not otherwise predisposed to commit. *See, e.g., United States v. Davis,* 902 F.2d 860, 866 (11th Cir.1990); *United States v. Perl,* 584 F.2d 1316, 1321 (4th Cir.1978). The question of entrapment is generally for the jury, because it raises the issue of whether the criminal intent originated with the defendant or with the government's agents. *Mathews v. United States,* 485 U.S. 58, 63, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988); *accord United States v. Fadel,* 844 F.2d 1425, 1430 (10th Cir.1988); *United States v. Ortiz,* 804 F.2d 1161, 1165 (10th Cir. 1986). Nevertheless, a defendant who is unable to carry his burden forward is not entitled to submission of the issue to the jury. The district judge has the duty of determining whether or not the defendant has met this initial burden. *Id.*

■ The district court generally makes this determination at the conclusion of a trial, by evaluating whether adequate evidence has been presented to warrant an entrapment instruction. The court may find as a matter of law that no entrapment existed, when there is no evidence in the record that, if believed by the jury, would show that the government's conduct created a substantial risk that the offense would be committed by a person other than one ready and willing to commit it. *Ortiz, supra,* 804 F.2d at 1166; *United States v. Reyes,* 645 F.2d 285 (5th Cir. Unit A 1981).

■ The degree of discretion that the trial court possesses to make this determination *prior* to trial is less clear. We think that the pretrial resolution of alleged entrapment, intertwined as it is with the issue of intent, is seldom appropriate, and we do not want to be understood as putting our seal of approval upon this practice. *See United States v. Yater,* 756 F.2d 1058, 1062 (5th Cir.), *cert. denied,* 474 U.S. 901, 106 S.Ct. 225, 88 L.Ed.2d 226 (1985). Nonetheless, under Fed.R.Crim.P. 12(b), we decline to overturn the district court's resolution of the issue in a pretrial hearing in this rare case where there was absolutely no evidence to support an entrapment defense.

In the present case, the evidence clearly shows that Osborne responded to the ad in "A & B Video" of his own volition, without any form of direct contact by the government or any opportunity for the government to importune him. Each successive transaction with the government required an affirmative decision on Osborne's part to continue, and at each stage he was provided the opportunity to withdraw. Instead, Osborne persevered until he achieved his objective of receiving the illegal videotapes, in the process admitting that he had a preference for viewing videotapes of girls age 13–17 engaging in masturbation and lesbian acts.

■ Although the evidence also shows that the government furnished Osborne with the opportunity to purchase illegal videotapes, Osborne cannot by a showing of solicitation alone succeed in shifting the burden of proving predisposition beyond a reasonable doubt to the government. *See, e.g., DeVore, supra,* 423 F.2d at 1071; *Velasquez, supra,* 802 F.2d at 106. This is so because solicitation by itself is not the kind of conduct that would persuade an otherwise innocent person to commit a crime, or that would be "so inducive to a reasonably firm person as likely to displace *mens rea*." *DeVore, supra,* 423 F.2d at 1072. *Accord Velasquez, supra,* 802 F.2d at 106;

*United States v. Ford*, 918 F.2d 1343, 1348 (8th Cir.1990) (citing *Jacobson, supra*). To place the burden onto the government, the defendant must also produce some evidence of unreadiness on his part, or of actual persuasion by the government. *De-Vore, supra*, 423 F.2d at 1071; *United States v. Tindle*, 808 F.2d 319, 329 (4th Cir.1986), *cert. denied*, 490 U.S. 1114, 109 S.Ct. 3176, 104 L.Ed.2d 1038 (1989).

Not only did Osborne fail to produce evidence of his unreadiness to purchase the illegal materials, but the government's placing of the advertisement hardly constitutes evidence of persuasion. In fact, it barely rises to the level of what has been deemed solicitation in this Circuit. *See De-Vore, supra* (government agent posed as truck driver seeking uppers to induce physician to supply them illegally); *Hunt, supra* (FBI agents conducted longterm scheme resulting in judge's accepting bribes); *Velasquez, supra* (government agent phoned defendants over 30 times before they finally acquiesced to agent's suggestion that one defendant acquire cocaine for the other). All of these cases involved personal contact of a government agent with a targeted individual, while in Osborne's case there was never any personal contact, face-to-face or otherwise, and he was targeted only as a result of his own actions. The record as a whole reveals Osborne as a willing purchaser of illegal pornographic material.

In the light of our precedent as applied to the evidence presented in this case, we cannot say that the district court abused its discretion in finding prior to trial that no entrapment existed as a matter of law. We therefore hold that the district court's rulings are

AFFIRMED.