998 F.2d 1011
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Garfield Anthony WILLIAMS, Defendant-Appellant.
 No. 92-5752.
 United States Court of Appeals,
Fourth Circuit.
 Argued: April 2, 1993.
Decided: July 14, 1993.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. William M. Nickerson, District Judge. (CR-91-456-WN)
 ARGUED: Joseph Roll Conte, BOND, CONTE & NORMAN, Washington, D.C., for Appellant.
 Thomas M. DiBiagio, Assistant United States Attorney, Baltimore, Maryland, for Appellee.
 ON BRIEF: Richard D. Bennett, United States Attorney, Baltimore, Maryland, for Appellee.
 D.Md.
 AFFIRMED.
 mre NIEMEYER and WILLIAMS, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Garfield Anthony Williams was convicted of aiding and abetting the possession with intent to distribute and of conspiracy to possess and distribute in excess of 50 grams of cocaine base. At trial Williams relied on entrapment as a defense. The district court, however, refused to submit the issue to the jury, instructing that as a matter of law the evidence was not sufficient to support the entrapment defense and the jury should not consider it. On appeal Williams contends that the evidence of entrapment was legally sufficient and, moreover, the government failed to demonstrate that he conspired with another as required for conviction of conspiracy under 21 U.S.C. § 846. After a careful review of the record, we affirm.
 
 
 2
 The arrest of Williams grew out of an earlier arrest of Sean Jones, a friend of Williams. Jones was arrested on drug charges in June 1991 by the Prince George's County (Maryland) Police Department and agreed to cooperate with the police as part of a plea agreement. As part of his cooperation, Jones informed the police, and testified at Williams' trial, that Williams had approached him in March 1991 for the purpose of participating in the transportation of drugs from New York to Maryland and sale of the drugs in Maryland. Jones agreed and the two made trips to Maryland bringing between an eighth and a quarter of a kilogram each week during a period from March to June 1991. Jones testified that on other occasions, before March 1991, he and Williams had likewise distributed drugs and that Williams continued dealing even after Jones was incarcerated.
 
 
 3
 After Jones was released from prison, under an arrangement for cooperation Jones advised Williams about a potential buyer for drugs in Maryland, "Tony," whom he stated he had met when he was "locked up." He told Williams that Tony had"a lot of money." Jones testified that Williams, after hearing the description of Tony, "wanted to make a deal with him." Jones thereupon arranged an introduction between Williams and Tony. "Tony" was Anthony Walker, an undercover police detective.
 
 
 4
 After numerous telephone conversations between Williams and Detective Walker, about half of which were initiated by Williams and the other half by Walker, Williams sold Walker an eighth of a kilogram of cocaine. The two met in a parking lot in Landover Mall in Landover, Maryland, on November 20, 1991, and consummated the deal, which was tape recorded. While exchanging the cash for the drugs, Detective Walker and Williams discussed the possibility of a later, larger deal involving a full kilogram of cocaine. They continued negotiations for this larger transaction and ultimately agreed on its terms.
 
 
 5
 Thereafter, Williams made arrangements for obtaining the kilogram of cocaine from Roland Campbell in Brooklyn, New York. Williams and Campbell reached an arrangement under which the two would drive down in Campbell's Jeep to Maryland; Williams would meet with Detective Walker and, if everything seemed in order, Williams would signal Campbell on a beeper. Campbell would then deliver the cocaine that was hidden in the Jeep, would pay Williams $6,000, and would retain the remainder. As Williams himself testified at trial about the arrangement:
 
 
 6
 Q. What was the nature of your agreement with Mr. Campbell?
 
 
 7
 A. The nature of the agreement, I would meet Mr. Walker, and I left my pager with him in the car and if everything seemed okay I beeped and put in digits, just codes that we made up. I think it was zeros.
 
 
 8
 Q. How much was Mr. Campbell to be paid?
 
 
 9
 A. I was only to get 6,000, so the remainder of the money would be his.
 
 
 10
 Williams had arranged with Detective Walker to meet again at Landover Mall to consummate the deal.
 
 
 11
 At the agreed upon time, Campbell and Williams drove Campbell's Jeep to Landover Mall and Campbell remained in his Jeep while Williams met Detective Walker. Williams told Walker he wanted to go somewhere else this time to complete the transaction. When Walker refused, Williams became suspicious. He then used Walker's cellular telephone to dial Campbell's beeper and send the code that the deal was off. When that effort failed, Williams walked past Campbell, who was still in the Jeep, and made a hand signal to him that the deal was off. As Campbell attempted to drive away, the police blocked him. He fled on foot, but was arrested. In the Jeep were found one kilogram of crack cocaine, a loaded semi-automatic pistol, a cellular telephone, and three beepers, including one belonging to Walker. Campbell was found to be wearing a bullet proof vest.
 
 
 12
 In support of his contention that he was entrapped, Williams testified that he had stopped dealing cocaine in 1989 and that his good friend, Jones, continuously brought up the name of"Tony." On appeal, Williams' attorney has argued that Williams agreed to make the deal with Tony only because of pressure from Jones, although there is no testimony in the record to suggest that. On the contrary, there seemed to be no resistance on Williams' part in selling an eighth of a kilogram to Tony, and the second transaction, involving a full kilogram, was not even participated in by Jones. That was arranged entirely between Walker and Williams in reciprocally initiated telephone conversations. While Williams did testify that he was reluctant to go through with the deal as evidenced by the fact that he called it off, this was only when Williams became suspicious that Tony was a police officer. We find none of the necessary elements of entrapment present. See United States v. Jones, 976 F.2d 176, 179-80 (4th Cir. 1992), cert. denied, 61 U.S.L.W. 3772 (1993). While Williams did claim that Jones was persistent in bringing up the name of "Tony", there is no evidence to suggest that Jones argued or pleaded with Williams to call Tony. And Williams did not claim any improper activity with respect to Detective Walker. In the absence of evidence enabling the jury to find entrapment, the district court was justified in refusing to instruct the jury on this defense. See United States v. Osborne, 935 F.2d 32, 38-39 (4th Cir. 1991).
 
 
 13
 Williams' argument that the evidence was insufficient to justify a conspiracy count likewise has no merit. Williams himself testified to an agreement between him and Campbell by which the two would complete the deal with Tony for one kilogram of cocaine. That arrangement was more than that of a supplier/purchaser. Campbell and Williams reached an arrangement under which both would ride in the Jeep carrying the cocaine to Maryland; Williams would clear the way to the transaction with Detective Walker and advise whether the way was clear; and Campbell would make the delivery. They also had agreed to a distribution of the proceeds of sale. This arrangement provides ample evidence that the two conspired to distribute cocaine and, indeed, actually pursued the object of their conspiracy in accordance with the arrangement. The only reason that the transaction was not completed was Williams' suspicion that Detective Walker was in fact a police officer. Cf. United States v. Giunta, 925 F.2d 758, 767 (4th Cir. 1991) (overturning conviction for conspiracy to import and distribute heroin due to lack of evidence of intention to actually perform agreement to obtain and deliver the drug).
 
 
 14
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 AFFIRMED