4 F.3d 986
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Tajammul Darryl ABDUL-KHALIQ, a/k/a James Darryl Graves,
Defendant-Appellant.
 No. 92-5762.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 7, 1993.
Decided: August 24, 1993.
 
 Appeal from the United States District Court for the District of South Carolina, at Columbia. Dennis W. Shedd, District Judge. (CR-92-211)
 Argued: Allen Bethea Burnside, Assistant Federal Public Defender, Columbia, South Carolina, for Appellant.
 Eric William Ruschky, Assistant United States Attorney, Columbia, South Carolina, for Appellee.
 On Brief: John S. Simmons, United States Attorney, Columbia, South Carolina, for Appellee.
 D.S.C.
 AFFIRMED.
 Before HALL and HAMILTON, Circuit Judges, and HEANEY, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.
 OPINION
 HEANEY, Senior Circuit Judge:
 
 
 1
 On March 28, 1992, Tajammul Darryl Abdul-Khaliq was arrested by agents of the United States Army Criminal Investigation Division (CID) at Fort Jackson, South Carolina, and charged with being a felon in possession of a firearm in violation of Title 18 U.S.C. Secs. 922(g), 924(a) (1988).[1] He was found guilty by a jury and sentenced to fifty-seven months imprisonment to be followed by three years of supervised release. This appeal followed. We affirm.
 
 
 2
 * The sole issue on this appeal is whether there was sufficient evidence to raise a jury issue of entrapment. The district court held, as a matter of law, that there was not. We review the district court's decision de novo. United States v. Osborne, 935 F.2d 32, 35 (4th Cir. 1991).
 
 
 3
 At trial, the prosecution and the defense presented two very different versions of the facts. Richard Chinn testified on behalf of the prosecution. He stated that he became a registered informant for the CID on March 21, 1992, after approaching it to offer his services.[2] He has a history of heroin addiction, and an extensive prior criminal record.[3] He testified that on March 28, 1992, while socializing with AbdulKhaliq at the home of a mutual friend, he noticed Abdul-Khaliq was carrying a firearm.[4] Chinn then asked Abdul-Khaliq to drive him to the NCO Club in Fort Jackson where Chinn said he could sell some heroin. Abdul-Khaliq told Chinn he would drive him if Chinn paid him half of the drug money ($75). Abdul-Khaliq then left the house for a few minutes, and Chinn immediately called his contact at the CID to inform him that he was going to Fort Jackson with a man who would be carrying a firearm. When they arrived at Fort Jackson, Chinn went into the NCO Club and Abdul-Khaliq waited in the car. Chinn again called a contact at the CID, who instructed him to return to the car and leave with Abdul-Khaliq. Two CID vehicles stopped them shortly thereafter. Both men were taken to the police station where Abdul-Khaliq was confined and Chinn was released.[5]
 
 
 4
 Abdul-Khaliq testified in his defense that on March 28, 1992, he was socializing with Chinn in the home of a mutual friend, but that he was not in possession of a firearm then or at any time during the drive to the NCO Club. He also testified that he never carries a firearm and has never been charged with an offense involving a firearm. Furthermore, he explained that he knew it was illegal for him, as a convicted felon, to possess a firearm. Abdul-Khaliq said that Chinn had told him that he wanted to collect money he was owed from someone at Fort Jackson. Abdul-Khaliq testified that upon arriving at the club, he stayed in the car and Chinn walked to the club's entrance but immediately returned to the car. At this point, Chinn told Abdul-Khaliq that he could not enter the club because he was carrying a firearm and asked Abdul-Khaliq to hold onto it for him. Chinn told Abdul-Khaliq to put the gun in his pants. Abdul-Khaliq at first refused, but then relented for the following reasons:
 
 
 5
 A: Because ... he had to go inside to pick up the money that was owed to him, and he-he didn't want to go in there with a gun and had asked me to hold ...-not actually ask, it was more strongly than that, and put me in a position where I couldn't really refuse not to hold the gun for him until he came out, until he finished his transaction.
 
 
 6
 Q: And which-what emotions of yours did he play on by asking you to hold the gun?
 
 
 7
 A: On our friendship and my sympathy for him, for being an older guy that I always tried to look out for him. Because I knew he was an older guy and he had that drug problem, so we tried to help him.
 
 
 8
 (R. at 210.) Chinn stayed in the club for about half an hour. Abdul-Khaliq stated that he did not hide the gun in the car because it was not his car, and he was not about to rummage through anyone's belongings-he had a reputation of trustworthiness to uphold. After Chinn returned to the car, he told Abdul-Khaliq that they would have to wait another twenty minutes to get the money. Abdul-Khaliq tried to return the firearm to Chinn, but Chinn refused because he had to go back inside in twenty minutes. Abdul-Khaliq told Chinn that he did not want to hold onto the firearm for another twenty minutes and that he knew a woman who lived just blocks away where they could drop off the firearm until Chinn completed his transaction. Abdul-Khaliq explained that he did not return the firearm to Chinn while on the way to drop it off because Abdul-Khaliq had to be the one to hand it over to his friend. While in transit to the house of Abdul-Khaliq's friend, they were stopped by the CID. Both men were taken to the police station.
 
 II
 
 9
 A defendant must show prima facie, overreaching, inducive conduct on the part of the government before the issue of entrapment can be submitted to the jury. United States v. DeVore, 423 F.2d 1069, 1071 (4th Cir. 1970), cert. denied, 402 U.S. 950 (1971). This requires that the defendant go forward with evidence beyond a mere scintilla that the government induced him to commit an offense he was not otherwise disposed to commit. United States v. Osborne, 935 F.2d 32, 38 (4th Cir. 1991). The district court must determine whether the defendant has met this burden before the defendant is entitled to submission of the issue of entrapment to the jury. Id. If the defendant successfully presents a submissible issue of governmental inducement, the burden then shifts to the government to"prove beyond reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by Government agents." Jacobson v. United States, 112 S.Ct. 1535, 1540 (1992).[6]
 
 
 10
 Accepting as true Abdul-Khaliq's testimony of the exchange between himself and Chinn in the automobile, Abdul-Khaliq has presented no evidence of inducement other than the demand by Chinn to hold the firearm and perhaps the expectation of monetary gain. Under the past decisions of this court, that evidence is not sufficient to make entrapment a submissible question for the jury. See United States v. Velasquez, 802 F.2d 104 (4th Cir. 1986) (no inducement where government agent telephoned defendants over thirty times to suggest that defendants acquire cocaine for the agent before they acquiesced); DeVore, 423 F.2d 1069 (no inducement where government agent twice solicited doctor to supply drugs illegally before doctor acquiesced). This was a mere solicitation that a reasonable-minded person could have resisted.[7] His reason was not overpowered by Chinn. He could have refused to take the gun, telling Chinn it was illegal for him to possess a firearm. Instead he chose knowingly to break the law.[8]
 
 
 11
 Based on the evidence in this case, we cannot say that the district court erred in finding, as a matter of law, that no entrapment existed. Accordingly, we affirm the district court's ruling.
 
 AFFIRMED
 
 
 [1]
 Abdul-Khaliq had been convicted in Florida and New Jersey of crimes punishable by imprisonment for a term exceeding one year
 
 
 [2]
 Prior to becoming an informant for the CID, Chinn had been an informant for two other law enforcement agencies in the state of South Carolina
 
 
 [3]
 Chinn's prior convictions were for possession of stolen postal money orders, car theft, forgery, and petty larceny
 
 
 [4]
 Chinn testified that he was aware that Abdul-Khaliq had spent some time in a penitentiary in New Jersey, but claims he did not know he was a felon
 
 
 [5]
 Immediately after Chinn's release, he walked over to a building adjacent to the police station where he met with CID Special Agent Jessie Harris. Chinn requested and received $25. He assumed it was for the arrest of Abdul-Khaliq
 
 
 [6]
 Were Abdul-Khaliq successful in showing inducement, the district court correctly decided there was sufficient evidence to create a jury question on the issue of predisposition. In Osborne we held that
 [P]redisposition is found from the defendant's ready response to the inducement offered. It is sufficient if the defendant is of a frame of mind such that, once his attention is called to the criminal opportunity, his decision to commit the crime is the product of his own preference and not the product of government persuasion.
 Id. at 38. Abdul-Khaliq testified that he had never possessed a weapon before the incident in question and was cognizant of his duty to refrain from such conduct. Chinn testified that he had seen Abdul-Khaliq in possession of a hand gun on three separate occasions. Thus, there was a clear conflict in the evidence with respect to predisposition that could only be resolved by a jury.
 
 
 [7]
 Abdul-Khaliq "did not testify[as] to any excessive behavior on the part of the government that could be said to be so inducive to a reasonably firm person as likely to displace mens rea ." DeVore, 423 F.2d at 1072
 
 
 [8]
 As an independent ground, the district court also ruled that Abdul-Khaliq had the opportunity to withdraw from his status as a felon in possession of a weapon by opening the car door, putting the gun on the ground, and quietly pushing it under the car. (R. vol. 2 at 8.) We doubt this alternative would have been helpful to Abdul-Khaliq. It seems clear that the automobile was under surveillance by the CID, and that if Abdul-Khaliq had opened the car door and put the gun on the ground, the CID agents immediately would have descended on him and made the arrest. It may be that Abdul-Khaliq would have been in a better position to have his entrapment defense go to the jury if he had taken that course of action, but we are not presented with that case today