51 F.3d 269
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Arsalan NOSRATI, Defendant-Appellant.
 No. 94-5336.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 2, 1995.
Decided April 10, 1995.
 
 ARGUED: Gregg Lewis Bernstein, MARTIN, JUNGHANS, SYNDER & BERNSTEIN, P.A., Baltimore, MD, for Appellant. Robert Reeves Harding, Assistant United States Attorney, Baltimore, Maryland, for Appellee. ON BRIEF: Lynne A. Battaglia, United States Attorney, Baltimore, MD, for Appellee.
 Before NIEMEYER, Circuit Judge, PHILLIPS, Senior Circuit Judge, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Arsalan Nosrati was convicted of conspiracy to distribute cocaine, distribution of cocaine, and unlawful transfer of firearms knowing that such firearms would be used in drug trafficking. Nosrati alleges that the district court erred by failing to sever the drug counts from the firearms count, by failing to give the requested entrapment instruction, by improperly calculating the quantity of cocaine attributable to Nosrati, and by enhancing Nosrati's sentence due to his use of a firearm in a narcotics scheme. Finding no error, we affirm.
 
 I.
 
 2
 Undercover detective Larry Best visited several car dealerships in 1991 pursuant to an FBI investigation of money laundering operations. In June 1991, Best met Nosrati and informed him that he was a cocaine dealer looking to buy a car. At subsequent meetings, Nosrati suggested to Best that he could help him with establishing more lucrative drug connections.
 
 
 3
 On October 10, 1991, Nosrati proposed that they jointly operate a narcotics operation. Best asked Nosrati whether his drug distributors had their own guns, and Nosrati responded that he could get whatever guns Best required, including AK-47s and Uzis. On December 6, 1991, Best and Nosrati met again and finalized the sale of four guns.
 
 
 4
 Best broke contact with Nosrati in 1992 while the DEA ran an undercover cocaine investigation. The investigation eventually led to Nosrati as the supplier of cocaine purchased by undercover agents. At trial, Nosrati was convicted of cocaine distribution in violation of 28 U.S.C. Sec. 841, conspiracy to distribute cocaine in violation of 28 U.S.C. Sec. 846, and of the sale of a firearm knowing that such firearm would be used in drug trafficking in violation of 18 U.S.C. Sec. 924.
 
 II.
 
 5
 Nosrati contends that the district court erred by joining the offenses of cocaine distribution and conspiracy to distribute with the offense of the sale of a firearm knowing that such firearm would be used in drug trafficking. Nosrati argues both that the prerequisites to joinder of offenses under Federal Rule of Criminal Procedure 8(a) were not met and that, even if joinder was proper under rule 8(a), severance should have been ordered under Rule 14. A district court's determination that a defendant is not entitled to a severance of charges is subject to review for abuse of discretion. United States v. Roberts, 881 F.2d 95, 102 (4th Cir.1989).
 
 
 6
 Rule 8(a) permits joinder of offenses if the offenses charged "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting part of a common scheme or plan." Nosrati claims that the drug and weapons offenses are not of the same or similar character and that they were too remote in time. The offer to sell Best firearms, however, was part of Nosrati's scheme to profit from a narcotics business relationship with Best. It was not error for the district court to have found that the firearms and narcotics offenses were part of a common scheme and joinder was proper.
 
 
 7
 Even when joinder is proper under Rule 8, however, a district court may sever the charges "if it appears that a defendant ... is prejudiced by a joinder of offenses...." F.R.Crim.P. 14. Nosrati claims that he was prejudiced by the joint trial because the jury could not "compartmentalize" the evidence, and thus that the jury might be tempted to convict him on the firearms charge simply because it was convinced that the narcotics charges were well-founded.
 
 
 8
 To sustain his burden, Nosrati "must show that a joint trial [was] so prejudicial as to have resulted in a miscarriage of justice." United States v. Pryba, 900 F.2d 748, 758 (4th Cir.1990). The evidence in the record was compelling on both the narcotics conspiracy and the firearms offense, and there are no indicia that the jury used the evidence of one crime to convict Nosrati of the other. Actual prejudice not having been shown, the district court did not abuse its discretion in refusing to sever the firearms and narcotics charges.
 
 III.
 
 9
 Nosrati argues that he was entrapped by Best and that the district court erred in refusing to grant the requested entrapment instruction. A district court's refusal to permit a defendant to argue the defense of entrapment to the jury is subject to de novo review. See, United States v. Daniel, 3 F.3d 775, 779 (4th Cir.1993).
 
 
 10
 Entrapment is defined as having "two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." Matthews v. United States, 485 U.S. 58, 63 (1988). Entrapment is an affirmative defense, and the initial burden is on the defendant to come forward with evidence "beyond a mere scintilla that the Government induced him to commit an offense he was not otherwise predisposed to commit." United States v. Osborne, 935 F.2d 32, 37 (4th Cir.1991). If there is sufficient evidence from which a reasonable jury could find entrapment, then the defendant is entitled to the entrapment instruction. Id.
 
 
 11
 An essential element of the inducement requirement is governmental overreaching. United States v. Daniel, 3 F.3d at 778. Examples of overreaching, and therefore inducement, include urging or coercing a reluctant defendant into committing a crime. Id. at 779. The district court found that there was no evidence of overreaching and that an entrapment instruction would therefore be inappropriate.
 
 
 12
 Nosrati argues that it was Best who first brought up the subject of guns and that, feeling threatened by Best, he agreed to a sale of guns. Nosrati suggests that he has therefore presented more than a mere scintilla of evidence of overreaching and that the entrapment instruction should have been given.
 
 
 13
 Although Best first mentioned the subject of firearms in general, it was Nosrati who first suggested selling firearms for use in drug trafficking. There is no evidence that Nosrati was in fear of Best, and there is no conduct which could be considered so coercive as to implant the criminal idea in the mind of an innocent party. More than a mere scintilla of evidence of governmental overreaching does not exist, and the district court did not err in declining to instruct the jury on entrapment.
 
 IV.
 
 14
 Nosrati asserts that the district court erred in finding one-half to two kilograms of cocaine to be attributable to him for the purposes of applying a base level offense of 26 under U.S.S.G. Sec. 2D1.1. Such a factual determination is reviewable under the clearly erroneous standard. United States v. Goff, 907 F.2d 1441, 1444 (4th Cir.1990). When there has been no seizure, the sentencing court may approximate the quantities of drugs involved, U.S.S.G. Sec. 2D1.4, although the government bears the burden of proving the quantity by a preponderance of the evidence. United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir.1993).
 
 
 15
 The district court found that 336 grams of cocaine were seized and another 140 grams were verified by two corroborating witnesses. In order to justify the sentencing decision, therefore, the district court need have found only 24 additional grams of cocaine to be attributable to Nosrati. Mark Visbal testified that he bought at least 30 ounces (720 grams) from Nosrati, and, based upon this testimony, the district court found that at least 500 grams were attributable to Nosrati. The district court was not clearly erroneous in its application of a base offense level of 26.
 
 V.
 
 16
 Finally, Nosrati contends that it was error for the district court to increase the base offense level by two points under Sec. 2D1.1(b)(1) of the Sentencing Guidelines. This section provides that an increase is appropriate if a dangerous weapon was possessed during a drug offense. The commentary to Sec. 2D1.1(b)(1) explains that the "adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."
 
 
 17
 The district court found that Nosrati's activities involving guns and drugs were interrelated. Such a determination for sentencing purposes will not be overturned unless clearly erroneous. See, United States v. Hayes, 15 F.3d 125, 127 (8th Cir.1994). Nosrati concedes that he possessed the firearms, and the evidence in the record indicates that Nosrati hoped that the gun sales and narcotics sales would merge into a larger illegal business relationship with Best. The district court was not clearly erroneous in finding Sec. 2D1.1(b)(1) applicable.
 
 
 18
 AFFIRMED.