47 F.3d 1166
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bernard William COLLINS, a/k/a Barney, Defendant-Appellant.
 No. 94-5108.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 4, 1994.
Decided Feb. 15, 1995.
 
 ARGUED: Gregory Davis, Assistant Federal Public Defender, Greensboro, NC, for Appellant. Michael Francis Joseph, Assistant United States Attorney, Greensboro, NC, for Appellee. ON BRIEF: William E. Martin, Federal Public Defender, Greensboro, NC, for Appellant. Walter C. Holton, Jr., United States Attorney, Greensboro, NC, for Appellee.
 Before WILLIAMS and MICHAEL, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Bernard Collins appeals his conviction and sentencing on two counts of acquiring and possessing food coupons in a manner not authorized by law. Collins argues that the district court erred in refusing to instruct the jury on the defense of entrapment, gave an erroneous and misleading supplemental jury instruction, and improperly enhanced the offense level under the Sentencing Guidelines. Finding no error, we affirm.
 
 I.
 
 2
 Sometime in January 1993, Norris Mason, an ex-convict and paid government informant, informed Officer Chris Leonard of the Lexington City Police Department that he had sold federal food coupons at Tripp's A-1 Seafood Store in Lexington, North Carolina numerous times during 1991 and 1992. Mason stated that he made some sales to Collins, the store manager, and others to Jesse Tripp, the owner. Officer Leonard passed the information along to the Food and Nutrition Service of the United States Department of Agriculture (USDA) which then planned an undercover investigation.
 
 
 3
 On February 2, 1993, Mason and Sheila Cephus, a USDA agent posing as Mason's wife, entered Tripp's and offered to sell Collins $230 in food coupons. Collins purchased the coupons for $115 cash. On February 4, Mason and Cephus returned to Tripp's, this time with $200 worth of coupons which Collins purchased for $100. Mason and Cephus returned to Tripp's a third and final time six days later, on which occasion they sold $330 in coupons to Jesse Tripp for $260 in cash. On August 30, 1993, a federal grand jury returned a three-count indictment charging Collins and Tripp with separate violations of 7 U.S.C. Sec. 2024(b)(1), which, together with implementing regulations, prohibits the knowing purchase of federal food coupons.[1]
 
 
 4
 At their ensuing jury trial, Collins and Tripp sought to rely on the defense of entrapment. Although each admitted that he had purchased the coupons and that he knew that it was illegal to exchange cash for food stamps, each also testified that he did so only out of sympathy for Mason, whom they both knew to be unemployed. In particular, Collins testified that Mason telephoned him at Tripp's on or immediately prior to February 2, 1993 asking him to purchase food stamps and alleging that he needed cash to purchase medicine and diapers for a sick child. Collins added that Mason had once previously asked him to purchase food coupons and that he had refused. Tripp told a similar story. The district court refused to give an instruction on the entrapment defense, however, finding "that there is not sufficient evidence raised in this case to show excessive or egregious Government conduct that led these two individuals to do things that they would not have done under other circumstances."
 
 
 5
 That ruling on entrapment presented the court with something of a quandary regarding how to charge the jury given the extent of both defendants' admissions. Defense counsel conceded that, without an entrapment instruction, there was precious little that they could argue to the jury. After defendants decided not to withdraw their pleas of not guilty, the court read to the jury the governing statute and regulations. It then defined the terms "knowingly" and "willfully":
 
 
 6
 The word "knowingly," as that term has been used from time to time in these instructions, means that the act was done voluntarily and intentionally, and not because of mistake or accident.
 
 
 7
 The word "willfully," as that term has been used from time to time in these instructions, means that the act was committed voluntarily and purposely, with a specific intent to do something which the law forbids. That is to say, with bad purpose, either to disobey or disregard the law.
 
 
 8
 Evidently this passage occasioned some confusion among the jurors, for several hours into their deliberations they submitted to the judge a written request for clarification. That request read in full: "We are stuck on willfully, voluntarily, purposely. Can you clarify for us. The crimes were committed. Please explain again how willfully, voluntarily, purposely applies--the main concern is purposely." In response, and over defense counsel's objection "to any further instructions," the judge reissued his instructions with slight modification. As Collins rightly observes in this appeal, "[t]he major distinction between the additional instructions of the court and its original instructions was that the court omitted from its original instructions on 'willfully' the following: '... That is to say, with bad purpose, either to disobey or disregard the law." Appellant's Br., at 14. The jury returned its verdict shortly after the court gave its supplemental instructions. It convicted Collins on both counts but acquitted Tripp.[2]
 
 
 9
 At the sentencing hearing that followed, the district court adopted the probation officer's recommendation of a two-level sentencing enhancement for more than minimal planning, and, on that basis, sentenced Collins to five months imprisonment on the two counts consolidated. The court also ordered a special assessment of $100, $215 restitution, and $1000 fine. This appeal followed.
 
 II.
 A.
 
 10
 The entrapment defense has two closely related aspects: governmental inducement to commit the crime and lack of predisposition on the part of the defendant. Mathews v. United States, 485 U.S. 58, 62-63 (1985). Once a defendant has presented some evidence that the government induced him to commit the offense charged, the government must prove beyond a reasonable doubt that the defendant was predisposed to act as he did. Jacobsen v. United States, 112 S.Ct. 1535, 1540 (1992); United States v. Jones, 976 F.2d 176, 179 (4th Cir.1992), cert. denied, 113 S.Ct. 2351 (1993). Under our precedents,
 
 
 11
 "[i]nducement" is a term of art: It involves elements of governmental overreaching and conduct sufficiently excessive to implant a criminal design in the mind of an otherwise innocent party. Solicitation, by contrast, is the provision of an opportunity to commit a criminal act.
 
 
 12
 United States v. Daniel, 3 F.3d 775, 778 (4th Cir.1993), cert. denied, 114 S.Ct. 1101 (1994). Put otherwise, "inducement" entails "excessive behavior on the part of the government that could be said to be so inducive to a reasonably firm person as likely to displace mens rea." United States v. DeVore, 423 F.2d 1069, 1071 (4th Cir.1970), cert. denied, 402 U.S. 950 (1971); see also United States v. Osborne, 935 F.2d 32, 38 (4th Cir.1991); United States v. Tindle, 808 F.2d 319, 329 (4th Cir.1986).[3] We agree with the district court that Collins did not satisfy his burden to come forward with more than a scintilla of evidence of excessive governmental conduct so extreme as to overcome the will of a hypothetical person of reasonable firmness. Even accepting as true Collins's testimony regarding Mason's phone call, we deem particularly significant (as did the district court) Collins's concession that Mason did not repeat any form of hardluck story in person on either February 2 or February 4. One single assertion by a government agent that he needs money to care for a sick child does not constitute "inducement" as we have heretofore defined it. It is not "conduct that created a substantial risk that the offense would be committed by a person other than one ready and willing to commit it." Osborne, 935 F.2d at 38 (emphasis added). Cf. United States v. Velasquez, 802 F.2d 104 (4th Cir.1986) (affirming district court's refusal to give entrapment instruction despite defendant's testimony that government informant had telephoned him more than thirty times to propose commission of offense charged).
 
 B.
 
 13
 A district court should respond to jury requests for supplemental instructions so as to clear up any apparent confusion without creating prejudice. United States v. United Medical and Surgical Supply Corp., 989 F.2d 1390, 1407 (4th Cir.1993). We review a district court's supplemental instructions for abuse of discretion. United States v. Horton, 921 F.2d 540, 546 (4th Cir.1990), cert. denied, 498 U.S. 846 (1991).
 
 
 14
 Collins urges on appeal that the district court abused its discretion in two respects. Collins argues, first, that the supplemental instructions did not clarify matters insofar as they did not respond to the jury's confusion regarding the word "purposely," and second, that the instructions "were extremely prejudicial to Collins and amounted to an implied instruction by the court to find defendant guilty." Defendant's Br., at 15.
 
 
 15
 This latter argument is clearly without merit. The district court implied nothing of the sort. The unfortunate truth for Collins was that, given the state of the evidence and the governing law, a jury could not reasonably do anything but find him guilty. Indeed, after the district court denied defendants an entrapment instruction, counsel for both defendants frankly conceded to the court that they were left effectively without a defense. JA 313-16. The former argument is no better, for Collins was not entitled in the first place to an instruction that the jury could not convict unless it found that he had acted "with bad purpose, either to disobey or disregard the law." By omitting this language from its supplemental instruction, the district court sought to eliminate any misapprehension on the part of the jury that they could not convict Collins unless they found that he acted with the specific "bad purpose" of breaking the law (as opposed, say, to the purpose or motive of helping Mason's child or turning a profit). The supplemental instructions, therefore, were neither erroneous nor prejudicial. Moreover, the fact that the jury returned with verdicts so promptly after hearing the supplemental instructions suggests that the new instructions were both responsive and helpful. There was no abuse of discretion.[4]
 
 C.
 
 16
 A defendant convicted of violating 7 U.S.C. Sec. 2024(b)(1) may have his offense level enhanced two levels for more than minimal planning. U.S.S.G. Sec. 2F1.1(b)(2). Application Note 1(f) under U.S.S.G. Sec. 1B1.1 provides in part:
 
 
 17
 "More than minimal planning" means more planning than is typical for commission of the offense in a simple form. [It] exists if significant affirmative steps were taken to conceal the offense.... "More than minimal planning" is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune.
 
 
 18
 In the Presentence Investigation Report, the Probation Officer recommended a two-level enhancment for more than minimal planning. The district court approved the Probation Officer's recommendation over defendant's objection.
 
 
 19
 At sentencing, the government has the burden of proving the applicability of a sentencing enhancement by a preponderance of evidence. United States v. Urrego-Linares, 879 F.2d 1234, 1239 (4th Cir.), cert. denied, 493 U.S. 943 (1989). In approving the enhancement, the district court explained:
 
 
 20
 On the matter of minimal planning, the Court does have an opportunity to evaluate witnesses. And though I have no doubt that Mr. Mason, who testified, could not remember accurately all of the times that he sold food stamps to Mr. Collins, I further have no doubt in accepting the testimony of Mr. Mason that he sold food stamps a number of times before that. This [the February 2, 1993 sale] was not the first occasion. Mr. Collins was the manager of the store, and had an opportunity to participate in the plan, and I do find there was more than minimal planning.
 
 
 21
 JA 396. Because Collins does not challenge the district court's factual finding at sentencing that Mason had sold food coupons to Collins on several occasions prior to the USDA sting, Defendant's Br., at 16, the only question is whether the repeated acts by Collins constitute "more than minimal planning." This is a question of law that we review de novo. United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir.1989). Contrary to Collins's insistence, it is not "clear that each instance was purely opportune." Therefore, the district court did not err in enhancing Collins's sentence for more than minimal planning.
 
 III.
 
 22
 For the foregoing reasons, we affirm Collins's conviction, and sentencing, on two counts of violating 7 U.S.C. Sec. 2024(b)(1).
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 The statute provides, in relevant part, that it shall be unlawful to "knowingly ... acquire[ ] ... coupons in any manner contrary to this chapter or the regulations issued pursuant to this chapter...." The pertinent regulation provides that "[c]oupons may not be accepted in exchange for cash, except when cash is returned as change in a transaction in which coupons were accepted in payment for eligible food...." 7 C.F.R. Sec. 278.2(a)
 
 
 [2]
 After excusing the jury, the district court expressed bafflement over the seemingly inconsistent verdicts. While we share the district court's view that the verdicts are legally irreconcilable, we agree that the jury's decision to acquit Tripp--perhaps because he made a considerably smaller profit than did Collins--does not itself render suspect its decision to convict Collins
 
 
 [3]
 The position taken in our precedents, that "inducement" implies not only something more than "mere solicitation," but something significantly more, appears to be that currently shared by a majority of circuits that have spoken to the matter. See e.g., United States v. Gifford, 17 F.3d 462, 468 (1st Cir.1994); United States v. Marino, 868 F.2d 549, 552-53 (3d Cir.1987); United States v. Barry, 814 F.2d 1400, 1402 n. 2 (9th Cir.1987); United States v. Ortiz, 804 F.2d 1161, 1165 (10th Cir.1986); United States v. Hill, 626 F.2d 1301, 1304 (5th Cir.1980). We are aware that there are positions that conflict with ours--two at least--in a minority of circuits. Most in conflict with ours is that of the Second Circuit which, tracing back to the view expressed by Judge Learned Hand in United States v. Sherman, 200 F.2d 880, 883 (2d Cir.1952), still holds that inducement may involve nothing more than "soliciting, proposing, initiating, broaching or suggesting the commission of the offense charged." See United States v. Dunn, 779 F.2d 157, 158-59 (2d Cir.1985). Under this approach, the defendant must satisfy two burdens of production in order to mount an entrapment defense: he must go forward with evidence both of governmental involvement and of his own lack of predisposition. Id. at 159; see also Jacobsen, 112 S.Ct. at 1541 (intimating that the government's mere involvement in the offense charged might constitute inducement, but noting that such a showing does not entitle the defendant to an entrapment instruction)
 An apparent intermediate position is that while "inducement" implies something more than "mere solicitation," it does not require much more, and might include such modest things as "pleas based on need, sympathy or friendship." United States v. Burkley, 591 F.2d 903, 912-14 (D.C.Cir.1978) (quoting "red book" model jury instructions with approval); see also United States v. Andrews, 765 F.2d 1491, 1499 (11th Cir.1985). With all respect to such conflicting positions on the matter as may exist in other circuits, and reserving the question whether they could lead to different outcomes in any event, see United States v. Evans, 924 F.2d 714, 716-17 (7th Cir.1991) (Posner, J.) (suggesting that the long-running debate regarding whether "mere solicitation" constitutes inducement might bear no practical consequences), we of course are bound by our precedents.
 
 
 [4]
 It bears emphasis that Collins does not base his objection to the supplemental instructions on the grounds that they effectively removed from the prior instructions the requirement that Collins had known that it was illegal to purchase food coupons for cash. In fact, such a requirement formed no part of the original instructions. Moreover, after the district court gave its original jury instructions, and before it decided how to respond to the jury's request for clarification, counsel for both defendants agreed with the court that, in a prosecution for violation of 7 U.S.C. Sec. 2024(b)(1), the government need not prove that the defendant knew that his manner of acquisition was unauthorized. JA 348-49. The court and counsel were mistaken. The Supreme Court has squarely held "that in a prosecution for violation of Sec. 2024(b)(1), the Government must prove that the defendant knew that his acquisition or possession of food stamps was in a manner unauthorized by statute or regulations." Liparota v. United States, 471 U.S. 419, 433 (1985)
 The irony, then, is that while the supplemental instructions were proper for the reasons discussed, cf. id., at 422 n. 3 & 433 n. 16 (calling "potentially misleading" instructions phrased in terms of "specific intent" and "purpose"), the district court's original instructions were in error. Of course, Collins's failure to object to the original instructions prevents us from reversing unless the district court committed plain error. The defendant must establish that he was prejudiced by the trial court's error for us to deem it plain. United States v. Olano, 113 S.Ct. 1770, 1778 (1993). Because Collins admitted that he was "familiar with the fact that it was illegal ... to give cash for food stamps," JA 250, he cannot satisfy his burden in this case.