**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

RICHARD E. WELSH,
Petitioner-Appellant,

v.

No. 94-7351

GERALD S. HOLT, Sheriff, Roanoke
County, Commonwealth of Virginia,
Respondent-Appellee.

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
James C. Turk, District Judge.
(CA-94-33-R)

Argued: December 8, 1995

Decided: February 28, 1996

Before MURNAGHAN, WILLIAMS, and MICHAEL,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Gerald Thomas Zerkin, GERALD T. ZERKIN & ASSO-
CIATES, Richmond, Virginia, for Appellant. Eugene Paul Murphy,
Assistant Attorney General, OFFICE OF THE ATTORNEY GEN-
ERAL, Richmond, Virginia, for Appellee. **ON BRIEF:** James S. Gil-
more, III, Attorney General of Virginia, OFFICE OF THE
ATTORNEY GENERAL, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Richard E. Welsh appeals an order of the district court dismissing his request for habeas relief for failure to state a claim on which relief can be granted. Welsh pleaded guilty in Virginia state court to violations of the Virginia Securities Act. See Va. Code Ann. §§ 13.1-501 to -527.3 (Michie 1993 & Supp. 1995). On appeal, Welsh presents three issues for review: (1) whether the Commonwealth of Virginia proved that it would have prosecuted Welsh using evidence from sources independent of Welsh's immunized testimony as required under Kastigar v. United States, 406 U.S. 441 (1972); (2) whether the trial court's denial of Welsh's motions to recuse denied him due process of law; and (3) whether Welsh demonstrated sufficient cause and prejudice to excuse the procedural default of certain claims. We affirm the denial of habeas relief.

I.

The facts and procedural history of this case are well-documented in the opinions of the Virginia courts that heard Welsh's direct appeals, see Welsh v. Commonwealth, 416 S.E.2d 451 (Va. Ct. App. 1992), aff'd, 437 S.E.2d 914 (Va. 1993), and the district court, see Welsh v. Holt, No. 94-33-R (W.D. Va. September 19, 1994). Accordingly, we confine ourselves to a brief recitation of the facts.

From the late 1970s until his indictment in February 1987, Welsh worked as an accountant for the National Caucus of Labor Committees (NCLC), an organization founded by Lyndon LaRouche, Jr., to promote his political activities, and supervised the financial operations of a number of other LaRouche corporations. From 1984 to 1987, NCLC experienced financial troubles and operated with a large deficit. To raise revenue, NCLC solicited loans from individuals, but misinformed the lenders of its financial condition. In violation of the

2

Virginia Securities Act, Welsh executed and delivered letters of indebtedness to the lenders knowing that they would not be paid.

In 1986, various federal and state law enforcement agencies commenced a multi-jurisdictional investigation of LaRouche's fundraising activities. Beginning in February 1987, federal grand juries in Alexandria, Virginia; Boston, Massachusetts; and New York, New York; and a state grand jury in Virginia indicted a number of LaRouche associates on federal and state charges as a result of the investigation.

On February 17, 1987, a Loudoun County, Virginia, grand jury indicted Welsh on four counts of violating the Virginia Securities Act. Shortly thereafter, federal prosecutors contacted the Virginia Attorney General's office to determine the feasibility of calling Welsh as a witness in the federal prosecutions under a grant of use and derivative use immunity (use immunity) pursuant to 18 U.S.C.A.§ 6002 (West 1985 & Supp. 1995), which bars Welsh's testimony and any evidence derived from it directly or indirectly from being used against him in any subsequent prosecution. See Kastigar, 406 U.S. at 460; see also United States v. Harris, 973 F.2d 333, 336 (4th Cir. 1992). The Virginia Attorney General's office concluded that the immunity grant would not hinder its prosecution of Welsh provided those working on the Virginia prosecution did not have access to the immunized testimony.

On July 22, 1987, Welsh made the first of several appearances before a federal grand jury in Alexandria pursuant to an order of use immunity. Welsh continued to testify under a grant of use immunity before federal grand juries and at the Alexandria and Boston trials of the LaRouche associates until December 1988.

Shortly before Welsh's trial on his Loudoun County, Virginia, indictment was scheduled to begin in April 1990, Welsh moved to dismiss the charges, or in the alternative to suppress the evidence to be presented against him at trial pursuant to Kastigar. Following a six-day Kastigar hearing, the trial court denied the motion.

After the denial of the motion to suppress, Welsh pleaded guilty to several violations of the Virginia Securities Act, namely: one felony violation -- selling unregistered securities with intent to defraud the

3

purchaser, and three misdemeanor violations -- one count of transacting business as an unregistered agent and two counts involving the sale of securities. As a condition of his plea agreement, Welsh reserved the right to appeal certain issues. See Va. Code Ann. § 19.2-254 (Michie 1995); see also North Carolina v. Alford, 400 U.S. 25 (1970). The trial court sentenced Welsh to seven years imprisonment for the felony conviction, with execution of the sentence suspended upon certain conditions. For the misdemeanor convictions, Welsh received concurrent terms of twelve months imprisonment, suspended upon serving seventy-five days in jail and performing 250 hours of community service. The Virginia Court of Appeals and the Virginia Supreme Court affirmed Welsh's convictions. Welsh v. Commonwealth, 416 S.E.2d 451 (Va. Ct. App. 1992), aff'd, 437 S.E.2d 914 (Va. 1993).

In January 1994, Welsh petitioned for a writ of habeas corpus in the United States District Court pursuant to 28 U.S.C.A. § 2254 (West 1994). On September 10, 1994, the district court dismissed Welsh's amended petition under Rule 12(b) of the Federal Rules of Civil Procedure for failure to state a claim. See Fed. R. Civ. P. 12(b)(6). Welsh now appeals the dismissal.

II.

Welsh first claims that the Commonwealth failed to meet its burden of proving that its prosecution of Welsh would have been based on evidence independent of Welsh's immunized testimony. Welsh contends that the Commonwealth did not satisfy its "heavy burden" under Kastigar of proving that the evidence it proposed to use in Welsh's prosecution was not tainted. See Kastigar, 406 U.S. at 460, 461. To preserve a witness's Fifth Amendment right against compelled self-incrimination, the Commonwealth is forbidden from using "the immunized testimony or any evidence derived from it either directly or indirectly" in the prosecution of a witness who received use immunity in exchange for that testimony. Harris, 973 F.2d at 336. To satisfy its burden, the Commonwealth must prove by a preponderance of the evidence that "the evidence `it proposes to use was derived from legitimate independent sources.'" Id. (quoting Kastigar, 406 U.S. at 461-62).

4

In this appeal, Welsh asserts that the trial court originally, the Virginia Court of Appeals and the Virginia Supreme Court on direct appeal, and the federal district court on habeas review, all erroneously concluded that the Commonwealth satisfied its burden of proving by a preponderance of the evidence that the evidence it planned to introduce at Welsh's trial was not tainted. Welsh challenges the courts' finding that the Commonwealth satisfied its burden under Kastigar by (1) identifying numerous instances of alleged taint and opportunities for taint to occur, and (2) arguing that the Commonwealth failed to identify at the pre-trial Kastigar hearing each witness and document it planned to introduce at trial.

As we stated in Harris, "[w]hen [a] court uses correct legal principles, its taint determination is a factual finding." Id. at 337. We accord a presumption of correctness in habeas proceedings to the taint determinations of the state courts if they arrived at their conclusions using a proper legal analysis. See 28 U.S.C.A.§ 2254(d) (West 1994); see also Sumner v. Mata, 455 U.S. 591, 591-97 (1982) (per curiam) (Sumner II). The presumption of correctness applies equally to facts found by state appellate as well as trial courts. See Sumner v. Mata, 449 U.S. 539, 545-47 (1981) (Sumner I). Before rejecting factual determinations, we "must more than simply disagree" with a state court's conclusions, Marshall v. Lonberger, 459 U.S. 422, 432 (1983); we "must conclude that the state court's findings lacked even `fair support' in the record." Id. If we determine that the findings are fairly supported, then "the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous." 28 U.S.C.A. § 2254(d) (emphasis added); see also Sumner I, 449 U.S. at 550.

A.

In support of his challenge, Welsh catalogs a voluminous list of allegedly tainted evidence and opportunities for taint to occur. After carefully considering the arguments of counsel and reviewing the record, we agree with the district court that the occurrences Welsh identifies amount to merely speculative opportunities for taint to occur, and "[t]he government is not required to negate all abstract `possibility' of taint." United States v. Byrd, 765 F.2d 1524, 1529

5

(11th Cir. 1985). Therefore, we reject Welsh's invitation to find error in the district court's taint determination on these grounds.

B.

Welsh also argues that because the trial court failed to require the Commonwealth to identify during the pre-trial Kastigar hearing each and every witness and document it planned to introduce at trial, the court erred in concluding that the Commonwealth carried its burden under Kastigar. See United States v. North, 910 F.2d 843, 872 (D.C. Cir. 1990) (per curiam). We disagree; the trial judge must engage in a "`line-by-line and item-by-item'" inquiry only when he finds it necessary in deciding whether the government carried its burden by a preponderance of the evidence. See United States v. Kilroy, 27 F.3d 679, 686 (D.C. Cir. 1994) (quoting North, 910 F.2d at 872).

For example, in North, the District of Columbia Circuit reversed the district court's decision not to make a more searching inquiry in a Kastigar hearing during grand jury proceedings because the court of appeals identified several instances of taint overlooked by the district court, and other circumstances further indicated a strong possibility of taint. See North, 910 F.2d at 872. In particular, the court of appeals first noted that a considerable number of witnesses had "`had their memories refreshed by the immunized testimony.'" Id. at 855 (quoting United States v. Poindexter, 698 F. Supp. 300, 313 (D.D.C. 1988)). Second, the record disclosed that "officials and attorneys from the Department of Justice, the Central Intelligence Agency, the White House, and the Department of State gathered, studied, and summarized North's immunized testimony in order to prepare themselves or their superiors and colleagues for their testimony before the investigating committees and the grand jury." Id. at 863. Third, during the two months when the grand jury was in recess without the supervision of the court or counsel, North testified under a grant of immunity at a Congressional hearing before a national television audience. Id. at 872. Finally, after North delivered the immunized testimony on television, the district court qualified two replacement grand jurors without "question[ing them] in any detail concerning any knowledge either might have [had] of the content or nature of the immunized testimony." Id.

6

Here, equivalently egregious circumstances simply do not exist. In a six-day Kastigar hearing, the trial judge entertained extensive testimony about the Commonwealth's elaborate precautions to prevent the prosecution team from hearing Welsh's immunized testimony and to segregate its investigation from the concurrent federal investigation. See Welsh, 437 S.E.2d at 918-19 (recounting in detail the precautions taken by the Commonwealth). Additionally, witnesses for the Commonwealth testified that by the time that Welsh was indicted, five months before he testified before a federal grand jury under a grant of immunity, the Commonwealth's prosecution file was ninety to ninety-five percent complete. Specifically, by the time Welsh was indicted, the Commonwealth had seized all of the incriminating documents and identified all but a "very, very few" of those which it planned to introduce into evidence at trial. (J.A. at 240.) By then the Commonwealth also had identified and interviewed the majority of the "victim" witnesses; the remainder either were identified and interviewed before Welsh gave his immunized testimony or were identified through sources other than Welsh's immunized testimony. Finally, the Commonwealth had obtained the cooperation of its two "insider" witnesses and determined the substance of their testimony at least four months before Welsh gave his immunized testimony. See Welsh, 437 S.E.2d at 919-20 (recounting in further detail the evidence of independent sources introduced by the Commonwealth). Furthermore, while noting that the Commonwealth bore the burden of production and persuasion at the Kastigar hearing, the trial judge observed that Welsh was unable to identify any specific instances of taint.

Under these circumstances, we cannot say that the trial court erred in deciding that proceeding "line-by-line and item-by-item" in the Kastigar hearing was unnecessary. In addition to finding his argument to be legally unavailing, we note that it would be unfair to allow Welsh to prevail on this argument, given that Welsh himself caused the absence of a concrete trial record identifying specific witnesses and documents. At trial, Welsh "had the choice to plead not guilty and face a trial at which he could reopen the question, or to enter a conditional guilty plea and preserve the question for appeal on the then-existing record." Kilroy, 27 F.3d at 687. Having chosen the latter, Welsh must take "the record as to trial evidence as he finds it." Id.

7

We also cannot say after reviewing the record that the taint determination was erroneous under the demanding standard of § 2254(d). See Harris, 973 F.2d at 338 (noting that "`[t]he focus of the inquiry under Kastigar . . . is not whether the prosecutor was aware of the contents of the immunized testimony, but whether he used the testimony in any way to build a case against the defendant'" (quoting United States v. Caporale, 806 F.2d 1487, 1518 (11th Cir. 1986), cert. denied, 482 U.S. 917 (1987))); see also United States v. Catalano, 491 F.2d 268, 272 (2d Cir.) (finding no taint where the prosecutor "established that he had prior knowledge of substantially all the information covered in the [defendant's immunized] testimony, thus foreclosing the possibility that he made `any use, direct or indirect, of the compelled testimony and any information derived therefrom'" (quoting Kastigar, 406 U.S. at 460)), cert. denied, 419 U.S. 825 (1974). Thus, we reject Welsh's arguments and conclude that the factual findings by the Virginia courts regarding absence of taint are fairly supported by the record and that Welsh is unable to muster the quantum of evidence necessary for us to rule that the findings were erroneous. See 28 U.S.C.A. § 2254(d).

III.

Welsh next claims that his due process rights were violated by the trial judge's refusal to recuse himself. Welsh argues that the trial judge's connections and correspondence with members of the Anti-Defamation League of B'nai B'rith (ADL), an organization allegedly hostile toward the NCLC, constituted prejudice against Welsh. As we observed in Aiken County v. BSP Division of Envirotech Corp., 866 F.2d 661 (4th Cir. 1989), "[b]ias or prejudice on the part of a judge . . . can be sufficiently pervasive as to implicate due process concerns. Allegations of bias or prejudice, however, involve difficult subjective determinations and `only in the most extreme of cases would disqualification on this basis be constitutionally required.'" Id. at 678 (quoting Aetna Life Insurance Co. v. Lavoie, 475 U.S. 813, 821 (1986)).

Like the previous courts that have considered Welsh's claim of bias, we conclude that it lacks merit. On habeas review, the district judge aptly characterized Welsh's evidence of prejudice as follows:

> [Welsh] has made no showing of any financial motive on the trial judge's part. None of [the trial judge]'s correspon-

dence with members of the ADL or correspondence which others subsequently forwarded to the ADL indicated any bias against the LaRouche organization or, more importantly, against petitioner. By contrast, [the trial judge] took special care not to read ADL literature regarding the LaRouche organization. Moreover, during the hearings in the trial court, he stated repeatedly that he harbored no ill will toward petitioner, that he had no interest in the outcome of the case, and that he was completely impartial.

(J.A. at 75.) Thus, we find no violation of Welsh's due process rights based on the trial judge's refusal to recuse himself.

IV.

Finally, Welsh argues that the district court should not have dismissed his procedurally defaulted claims of selective and bad-faith prosecution and outrageous government misconduct. Welsh contends that, under Coleman v. Thompson, 501 U.S. 722, 750 (1991), he demonstrated through new evidence sufficient cause and prejudice to excuse his failure to appeal these claims, which he first raised before the trial court. Assuming, without deciding, that Welsh is able to show cause, we find that Welsh cannot satisfy the prejudice prong and thus affirm the district court's conclusion that Welsh has procedurally defaulted these claims.

A.

Welsh contends that new evidence supports his selective and bad-faith prosecution claims. In the Virginia proceedings, the trial judge ruled that Welsh's claims of selective and bad-faith prosecution failed because Welsh was unable to prove an improper purpose by the Commonwealth. To show improper purpose, Welsh must prove that the decision to prosecute was "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification, including the exercise of protected statutory and constitutional rights." Wayte v. United States, 470 U.S. 598, 608 (1985) (selective prosecution) (internal quotation marks and citation omitted); see also United States v. P.H.E., Inc., 965 F.2d 848, 853 (10th Cir. 1992) (stating that in the context of a bad-faith prosecution claim, the defendant must

9

prove that the prosecution was "motivated by a desire to discourage expression protected by the First Amendment"). This is a factual finding, and thus we presume that it is correct under 28 U.S.C.A. § 2254(d). Evans v. Thompson, 881 F.2d 117, 122 (4th Cir. 1989), cert. denied, 497 U.S. 1010 (1990).

Welsh's new evidence is insufficient to support a finding that the prosecution was commenced for an improper purpose. We dismiss as inconsequential to our inquiry Welsh's litany of allegations regarding the investigating officers because Welsh fails to prove that the officers had any influence on the Virginia Attorney General's decision to prosecute him. See United States v. Smith, 812 F.2d 161, 163 (4th Cir. 1987). After dismissing these arguments, the following of Welsh's contentions remain for us to examine:[1] (1) a statement by the Federal Bureau of Investigation (FBI) that Mary Sue Terry, the Virginia Attorney General, was politically motivated demonstrates that the Commonwealth prosecuted Welsh deliberately to stifle his exercise of his First Amendment rights; and (2) the Commonwealth failed to reveal to Welsh that witnesses who were to testify at trial had been "deprogrammed."

Welsh's arguments are unavailing. First, the statement by the FBI that Attorney General Terry was politically motivated does not show that Terry sought to prevent people associated with the LaRouche organization from exercising their First Amendment rights; it was a transparent reference to the possibility that the LaRouche investigation and prosecutions could generate favorable publicity for the Attorney General's office if they were conducted successfully.[2] Second, the

_____

[1] We have attempted to summarize the new evidence as argued by Welsh, but we have been stymied by inartful drafting on the part of Welsh's counsel. We have found it difficult, if not impossible, to determine what is "new" and what is "old" evidence from a reading of Welsh's brief and the materials in the joint appendix. We have attempted, however, to err on the side of overinclusion.

[2] Examining the statement in context reveals how meritless Welsh's contention is:

> The [FBI] document cites Terry's obdurate insistence on the Commonwealth being the lead agency in securing buildings dur-

10

alleged failure to reveal the deprogramming of witnesses, if true, may show some deceptive trial tactics by the Commonwealth, but it does not suggest that the earlier decision to prosecute Welsh was based on an improper motive. Thus, we must reject Welsh's appeals of his selective and bad-faith prosecution claims because he is unable to show sufficient prejudice to excuse his procedural default.

B.

Welsh also posits that new evidence sufficiently supports his claim of governmental misconduct. To violate Welsh's right to due process of law, "the government's conduct must be so outrageous as to shock the conscience of the court." United States v. Osborne, 935 F.2d 32, 36 (4th Cir. 1991). After carefully considering the arguments of counsel and reviewing the record, though we would not condone the conduct of the Commonwealth's investigators if Welsh's allegations were true, we find that the alleged misconduct does not reach the "high shock threshold" necessary for us to find a due process violation. See id. (citing United States v. Simpson, 813 F.2d 1462 (9th Cir. 1987), cert. denied, 484 U.S. 898 (1987), favorably for failing to find a due process violation where the "FBI manipulated[a] woman into providing sexual favors to a targeted person in order to lure him into selling heroin to undercover agents"). Therefore, we find that Welsh has failed to make a showing of prejudice sufficient to excuse his procedural default and affirm the district court's dismissal of Welsh's governmental misconduct claim.

_____

ing the . . . law enforcement raid of LaRouche associated companies in Leesburg . . . . After multiple consultations between Terry, her staff, and high ranking federal officials, during which the federal officials attempted to impress upon her the danger in having state agents untrained in such operations leading the raid, the latter had to plainly emphasize to Terry "that there was much more involved in this case than just mere temporary political mileage to be gained from favorable publicity deriving from this case."

(J.A. at 45 (excerpt from Welsh's habeas petition).)

11

V.

We have reviewed all of Welsh's other arguments and find them meritless. Accordingly, we affirm the decision of the district court to dismiss Welsh's habeas petition.

AFFIRMED

12