**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 95-5171

TERRYONTO MCGRIER, a/k/a Rodney
Jones,
Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Charles H. Haden II, Chief District Judge.
(CR-93-196)

Argued: May 10, 1996

Decided: July 22, 1996

Before NIEMEYER, WILLIAMS, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Mychal Sommer Schulz, JACKSON & KELLY, Charleston, West Virginia, for Appellant. Michael O. Callaghan, Assistant United States Attorney, Charleston, West Virginia, for Appellee. **ON BRIEF:** Rebecca A. Betts, United States Attorney, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Terryonto McGrier was convicted of conspiring to possess with intent to distribute cocaine base and heroin, in violation of 21 U.S.C. § 846, and carrying and using a firearm in relation to the commission of a drug trafficking crime, in violation of 21 U.S.C. § 924(c). The district court sentenced him to life imprisonment on the drug count and a consecutive five-year prison term on the firearm count. On appeal, McGrier alleges violations of his constitutional right to a speedy trial and of the Speedy Trial Act, insufficiency of the evidence, improper use of pretrial immunized testimony, and sentencing errors. We affirm.

I

In October 1990, Jerome Thomas, McGrier's convicted co-conspirator, recruited Rodney Merritt to bring cocaine base and heroin to Charleston, West Virginia, for distribution through a network which included Betty Lou White, Willis Moore, Charles Lee Smith, and McGrier.

Merritt was arrested and negotiated a plea agreement in exchange for his cooperation in the investigation of Thomas' activities. While Merritt was cooperating, Thomas brought McGrier to Charleston. In October 1990, Thomas introduced McGrier as "Bam" to Betty Lou White, and Thomas, McGrier, and White became involved in the sale of heroin. Heroin was distributed on three to four occasions to Willis "Baby" Moore. Moore would telephone Thomas or McGrier indicating that he wished to purchase heroin. Thomas, White, and McGrier would then travel to a prearranged telephone booth where Thomas would place heroin in the coin slot of the phone. After Moore sold the heroin, he gave money back to Thomas, McGrier, or White.

2

On November 21, 1990, a controlled call was made by Merritt to Charles Lee Smith to arrange a meeting of Merritt and Thomas at Cutlip's Motel in Charleston. After the call, Thomas told Smith to take McGrier to Cutlip's Motel to find Merritt. When Thomas did not appear at Cutlip's Motel, Merritt was brought by Officers Hart and Crawford to a nearby Motel 6. There, Merritt spotted Thomas and McGrier in a car driven by Thomas. McGrier began firing at Merritt and Officers Hart and Crawford as they stood in the parking lot talking. Thomas and McGrier drove away with the officers and a marked police car in pursuit. Thomas veered off the road, killing a bicyclist. Several miles later, Thomas wrecked the car and was arrested. McGrier fled on foot and was arrested hours later.

While McGrier was incarcerated, he made various statements to other prisoners regarding his drug dealings. In July 1992, he told George Carter that he sold "boy and girl" (street names for heroin and cocaine) in Charleston, West Virginia. He told inmate George Posey that he was associated with "Jerome" [Thomas] at the time of the shootout.

II

McGrier contends that the government violated his right to a speedy trial under the Sixth Amendment by failing to bring him to trial for over four years after the issuance in November 1990 of the criminal complaint, arrest warrant, and federal detainer. His challenge focuses on the more than two-and-one-half-year period before his federal indictment. The government elected to permit the state to prosecute the defendants first without interference from the federal government. The government also gave as reasons for delay its consideration of what charges to bring, its need to know the state sentence and the length in custody there, its decision whether to try McGrier with Thomas, and its assessment of problems raised by McGrier's post-conspiracy statements.

This very issue was examined and disposed of by us in the appeal of Thomas, McGrier's co-defendant. See United States v. Thomas, 55 F.3d 144, 148-51 (4th Cir.), cert. denied, 116 S. Ct. 266 (1995). In Thomas, we held that defendant's Sixth Amendment right to a speedy trial was not violated despite an uncommonly long delay of more than

two years between the filing of the complaint and the indictment and the resulting presumption of prejudice, where the defendant did not assert his right to a speedy trial in due course, and the government gave plausible reasons for the delay. Because there are no facts that materially distinguish McGrier's case, we reject the argument for the same reasons as those given in Thomas.

III

McGrier also contends that in finding a violation of the Speedy Trial Act--because more than 30 days accrued between his federal arrest and indictment--the district court abused its discretion by dismissing the original indictment without prejudice. Because the dismissal was without prejudice, McGrier was later charged by a superseding indictment, tried, and convicted. The district court determined that the original indictment should be dismissed without prejudice because the crimes involved were serious and there was no indication that the government deliberately attempted to evade the Speedy Trial Act.

Our review of the record reveals that the district court did not abuse its discretion in dismissing the indictment without prejudice. The Speedy Trial Act provides that in determining whether an indictment should be dismissed with or without prejudice, "the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(1).

The district court considered these factors and applied them to the facts of this case, and the record provides sufficient support for the court's decision.

IV

McGrier next contends that the evidence is insufficient to support his participation in the conspiracy involving Merritt and Thomas. The government, on the other hand, argues that McGrier not only partici-

4

pated in the distribution of heroin, but also acted as a "hit man" when the conspiracy was crumbling. The evidence amply supports the government's claim.

In addition to evidence of McGrier's central role in the shootout with the police, which showed that McGrier himself fired five times, there was testimony that McGrier was involved in the drug transactions as early as October 1990, when the conspiracy began. Both White and Moore described the heroin transactions, and both testified that McGrier was a participant. On motion for judgment of acquittal, the district court reviewed the evidence at trial and stated that "it is left with the firm conclusion a reasonable jury could find the Defendant guilty beyond a reasonable doubt on the counts of conviction by reason of the evidence submitted in support of those charges." We agree.

V

McGrier argues that the government improperly used his pretrial immunized testimony in violation of Kastigar v. United States, 406 U.S. 441 (1972). The government insists, however, that the evidence it presented at trial against McGrier was obtained from sources other than McGrier's immunized testimony.

The immunized testimony, given pursuant to a plea agreement which the court later rejected, consists of McGrier's debriefing on October 25, 1993, and grand jury testimony given on November 30, 1993. All involved government agents testified that they believed McGrier's debriefing was less than forthright and truthful and that the debriefing thus ended abruptly without revealing useful information, and the district court so found. The court also found that Merritt's 72-page grand jury testimony of November 28, 1990, and not McGrier's 9-page testimony, was the source upon which the government relied to further its investigation. Before the grand jury, McGrier was questioned simply to "elicit enough facts to support a factual basis of his involvement in the charged drug conspiracy." Moreover, the government attorney testified, "All the information that was extracted to prosecute the case [against McGrier] came from Rodney Merritt."

To preserve a witness' Fifth Amendment right against compelled self-incrimination, the government is forbidden under Kastigar from

5

using "the immunized testimony or any evidence derived from it either directly or indirectly" in the prosecution of a witness who received use immunity in exchange for their testimony. United States v. Harris, 973 F.2d 333, 336 (4th Cir. 1992). And the government must satisfy the "heavy burden" of proving by a preponderance of the evidence that the information it proposed to use in defendant's prosecution was not tainted. See Kastigar, 406 U.S. at 460-62; Harris, 973 F.2d at 336.

McGrier's arguments that the government did not meet its burden "amount[ed] to merely speculative opportunities for taint to occur, and `[t]he government [was] not required to negate all abstract "possibility" of taint.'" Welsh v. Holt, 1996 WL 84487, at *3 (4th Cir. Feb. 28, 1996) (unpublished) (quoting United States v. Byrd, 765 F.2d 1524, 1529 (11th Cir. 1985)). Accordingly, we agree with the district court's conclusion that the evidence introduced against McGrier was not tainted by use of his pretrial immunized testimony.

VI

In connection with his sentencing, McGrier contends that the district court's calculation of his base offense level by using 17 ounces and 26.35 grams of crack cocaine and by making an upward adjustment for obstruction of justice was clearly erroneous. The government argues that the factual findings necessary for the calculation of the base offense level and the upward adjustment were established by a preponderance of the evidence and the district court's factual findings are not clearly erroneous. Our review of the record leads us to agree with the government, even though we also agree that the evidence did not provide a precise calculation of the quantity of the controlled substance. But a precise calculation is not required. See, e.g., United States v. Cook, 76 F.3d 596, 604 (4th Cir. 1996).

Merritt admitted at trial, "I think it was 20 ounces of cocaine, crack cocaine," that were involved. Officer Hart testified that after reviewing the grand jury transcript of Merritt's testimony, he concluded that Thomas and Merritt had 18 ounces of cocaine base for distribution, and of that amount, they used approximately two grams to entice two women to have sex with them prior to Thomas' departure. Thus, Officer Hart subtracted the two grams from the 18 ounce total, arriving

6

at relevant conduct of slightly less than 18 ounces of cocaine base. The district court accepted these calculations for establishing McGrier's offense level.

McGrier argues that the district court should have relied upon the actual drugs introduced at trial to calculate the base offense level. But the testimony reveals that to do so would have grossly underestimated the amounts of drugs involved in the conspiracy. The testimony is replete with references to large dollar figures and numbers of bags of cocaine, which supports a finding that the conspiracy involved much more cocaine base than that which the police actually seized. We conclude that the district court's factual findings are not clearly erroneous.

On the upward adjustment for obstruction of justice, the district court also did not clearly err. The court's findings are based on crediting the testimony of George Posey and Linda Ingram concerning threats made to them or transmitted to them from McGrier through intermediaries. The court found that the threats to Posey were made prior to trial through intermediaries, and the threat to Ingram was made directly by McGrier after the trial. Such conduct meets the obstruction of justice enhancement. See U.S.S.G. § 3C1.1, application note 3(i) (listing conduct prohibited by 18 U.S.C.§ 1513).

## VII

Finally, McGrier argues that 18 U.S.C. § 841 and the Sentencing Guidelines create an ambiguity in the manner in which they distinguish cocaine base from powder cocaine for sentencing purposes. He urges that under the rule of lenity he should therefore have been sentenced under provisions applicable to powder cocaine, and the refusal to do so violates the Equal Protection Clause.

In recent decisions, we have directly addressed and rejected these arguments. See United States v. Fisher, 58 F.3d 96 (4th Cir.), cert. denied, 116 S. Ct. 329 (1995); United States v. Jones, 18 F.3d 1145 (4th Cir. 1994). For the reasons given in Fisher and Jones, we again reject the arguments here.

AFFIRMED