**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 96-4098

LESTER LEE BASS,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 96-4422

TOMMY ESSICK,
Defendant-Appellant.

Appeals from the United States District Court
for the Middle District of North Carolina, at Greensboro.
William L. Osteen, Sr., District Judge.
(CR-95-112)

Submitted: March 11, 1997

Decided: July 31, 1997

Before HALL, ERVIN, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

A. Wayne Harrison, Sr., HARRISON, NORTH, COOKE, & LAN-
DRETH, Greensboro, North Carolina; Robert I. O'Hale, CLIFFORD,

CLENDENIN & O'HALE, L.L.P., Greensboro, North Carolina for Appellants. Walter C. Holton, Jr., United States Attorney, Harry L. Hobgood, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellants Tommy Essick and Lester Lee Bass were convicted by a jury of one count each of conspiracy to possess with intent to distribute and to distribute marijuana (21 U.S.C. § 846 (1994)) and attempted possession of marijuana with intent to distribute (21 U.S.C. § 841(a)(1) (1994)). In these consolidated appeals, Essick and Bass raise seven issues: (1) whether the district court erred in denying Essick's motion to dismiss count two of the indictment (attempted possession of marijuana); (2) whether the district court erred by giving an aiding and abetting instruction to the jury in connection with count two of the indictment; (3) if the district court erred in denying the motion to dismiss and by giving the aiding and abetting instruction, whether these errors prejudicially confused the jury and made a fair trial on count one (conspiracy) impossible; (4) whether the district court erred by denying Bass's motion for judgment of acquittal on the conspiracy charge; (5) whether the district court erred by not allowing Bass to present evidence pursuant to Fed. R. Evid. 804(b)(3); (6) whether the district court erred by not allowing Bass to present evidence showing that he was not predisposed to commit the crime and failing to give an entrapment instruction to the jury; and (7) whether Bass was entitled to a downward adjustment from the Sentencing Guidelines* as a minor participant. Finding no reversible error, we affirm.

_____

*United States Sentencing Commission, <u>Guidelines Manual</u> (Nov. 1995).

2

Essick and Bass were part of a large drug conspiracy headed by Hobart ("Hobart") and Sandra Crotts. Tony Walser ("Walser") was one of the primary lieutenants of the conspiracy. Walser was apprehended in March 1995 and agreed to cooperate with authorities. As part of this cooperation, Walser, along with an undercover agent, set up a shipment of approximately 118 pounds of marijuana from Texas to North Carolina. The shipment was to be delivered in a fifty-five-gallon barrel on April 5, 1995.

After Walser returned to North Carolina, he and Hobart discussed who would pick up the marijuana. Hobart informed Walser that Essick enlisted Bass to make the pick-up. Essick told Bass that he (Bass) would receive $10,000 for his efforts. Bass also admitted at trial that he knew Hobart and Essick were involved in drugs and suspected that the pick-up involved some type of controlled substance.

Walser contacted Essick who told him when and where to pick up Bass. At some point, Bass expressed concerns about Walser because he (Bass) had been instrumental in putting Walser in prison several years before. Essick set up a meeting with Hobart, who assured Bass that the pick-up was "legitimate." Based on his meeting with Hobart, Bass agreed to pick up the drugs. Bass went to the depot on April 5, 1995 to pick up the drugs, and government agents assisted him in loading the barrel into the truck. Bass was apprehended as he attempted to leave the depot.

No. 96-4422

Essick claims that the district court erred in denying his motion to dismiss the attempted possession count because the evidence presented at trial was insufficient to support conviction. Specifically, Essick alleges that the Government failed to show that he was to receive any of the marijuana. Essick further attempts to portray the April 5 incident as being entirely between Walser and Bass.

We find these claims to be without merit. Essick was a frequent customer, receiving at least forty-seven pounds of marijuana during the course of the conspiracy. In addition, Essick recruited Bass, arranged for Walser to provide Bass with a rental truck and a bill of lading, told Walser where and when to pick up Bass, arranged for

3

Bass to meet with Hobart when Bass expressed concerns about the pick-up, made inquiries after Bass's arrest, and was to be paid $1000 for his services. While Essick is correct in his assertion that there was no evidence showing that he was to receive any of the marijuana, the evidence clearly showed that he played a major role in arranging the pick-up. Accordingly, we find that the evidence was sufficient to find that Essick possessed the culpable intent to commit the crime charged and took substantial steps toward the completion of the crime. See United States v. Neal, 78 F.3d 901, 906 (4th Cir.), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3260 (U.S. Oct. 7, 1996) (No. 95-9410).

Essick also asserts that the district court erred in giving an aiding and abetting instruction because the evidence did not support the instruction and because he was never charged with aiding and abetting. We find that this argument is also without merit.

An "indictment or information need not specifically charge aiding and abetting in order to support a conviction on that charge . . . [because aiding and abetting] applies implicitly to all federal offenses." Pigford v. United States, 518 F.2d 831, 834 (4th Cir. 1975); see also United States v. Mucciante, 21 F.3d 1228, 1234 (2d Cir. 1994). Since the evidence supported the elements of the offense, and since the Government argued for aiding and abetting liability, the instruction was proper. See Mucciante, 21 F.3d at 1234 ("An aiding and abetting jury instruction is appropriate where the prosecution makes it known that it intends to proceed on a theory of aiding and abetting and the evidence so warrants.") (citation omitted). We therefore find that the district court did not abuse its discretion in giving an instruction on aiding and abetting.

Since the district court did not err as to Issues One and Two above, Essick's third issue is moot. Moreover, since aiding and abetting has different elements from conspiracy, and since the jury was properly instructed to keep the offenses separate, we find that Essick failed to show how the jury was confused by the evidence.

No. 96-4098

Bass asserts that the evidence was insufficient to support his conviction for conspiracy because the only one he communicated with

4

was Walser. Since Walser was acting as a government informant, he was incapable of forming the necessary criminal intent to form a conspiracy. See United States v. Heater, 63 F.3d 311, 323 (4th Cir. 1995), cert. denied, ___ U.S. ___, 64 U.S.L.W. 3485 (U.S. Jan. 16, 1996) (No. 95-7090) (one cannot conspire with a government agent or informant).

We find that the evidence was sufficient to implicate Bass in the overall conspiracy. See United States v. Brooks , 957 F.2d 1138, 1147 (4th Cir. 1992) ("Once it has been shown that a conspiracy exists, the evidence need only establish a slight connection between the defendant and the conspiracy to support conviction."). It was undisputed that there was a large drug conspiracy, and Bass admitted that he knew that he was picking up something for someone he knew was involved with drugs (Hobart) and that he suspected the barrel contained controlled substances. Therefore, the "slight connection" between Bass and the larger conspiracy was established. Moreover, contrary to Bass's assertions, evidence was presented at trial showing that Bass conspired with Essick and Hobart, in addition to Walser. As a result, there was sufficient evidence to support Bass's conviction for conspiracy, and the district court did not err in denying Bass's motion.

Bass wanted to introduce evidence at trial that Walser told Essick to have Bass make the pick-up instead of Essick's son. Bass wanted to use the statement to support his claim that Walser "set him up" out of revenge for Bass's role in putting Walser in prison several years earlier.

The burden was on Bass to show that the evidence met the requirements of Fed. R. Evid. 803(b)(3), and "the court's decision on its admissibility is reviewed for abuse of discretion." United States v. Bumpass, 60 F.3d 1099, 1102 (4th Cir. 1995), cert. denied, ___ U.S. ___, 64 U.S.L.W. 3550 (U.S. Feb. 20, 1996) (No. 95-1076). We find no abuse of discretion here.

Hearsay statements may only be admitted under Rule 803(b)(3) if "(1) the declarant is unavailable, (2) the statement is genuinely adverse to the declarant's penal interest, and (3) corroborating circumstances clearly indicate the trustworthiness of the statement. Id.

5

(internal quotation marks omitted). The proffered evidence failed to meet any of these requirements. First, contrary to Bass's assertions, Walser was the original declarant, not Essick. Since Walser testified at trial, he certainly was not "unavailable." Second, there was no evidence showing that the alleged statement was against Walser's penal interest. Finally, evidence was presented at trial showing that Hobart suggested using Bass and that Walser was simply told that Bass was the one making the pick-up. As a result, the evidence at trial contradicted the trustworthiness of the statement rather than corroborated it.

During the trial, Bass sought to introduce testimony from several witnesses who were prepared to testify that Bass had a reputation as a law-abiding citizen with no prior involvement in criminal activities. Bass sought to introduce the testimony to prove that he was not predisposed to commit the crime.

We find that the district court properly declined to admit the proffered testimony. Since "the fact that a defendant has not previously committed any related crime is not proof of lack of predisposition," the testimony was irrelevant. United States v. Osborne, 935 F.2d 32, 37-38 (4th Cir. 1991).

Since the question of entrapment is generally one for the jury, this court reviews the district court's decision not to give an entrapment instruction de novo. United States v. Singh, 54 F.3d 1182, 1189 (4th Cir. 1995). Applying this standard, we find that the district court did not err in deciding not to give the instruction. Entrapment is an affirmative defense, and the burden is on the defendant to go forward with evidence beyond a mere scintilla that the government induced him to commit an offense he was not otherwise predisposed to commit. Osborne, 935 F.2d at 38. A defendant who is unable to carry his burden forward is not entitled to submission of the issue to the jury. Id.

The Supreme Court has held that the entrapment defense has two elements: (1) government inducement and (2) lack of predisposition. Of the two, predisposition is the more important. Mathews v. United States, 485 U.S. 58, 63 (1988). In the present case, Bass did not present any evidence to support his conclusory claims that he was not predisposed to commit the offense, other than the inadmissible testimony concerning his lack of prior involvement in criminal activity. More-

6

over, other than Bass's self-serving claims that Walser pushed for his recruitment, there was no evidence of government inducement. To the contrary, substantial evidence was presented showing that Hobart and Essick recruited Bass, not Walser. Since Bass failed to present anything more than a "mere scintilla" of evidence, the district court properly found "as a matter of law that no entrapment existed." Osborne, 935 F.2d at 38.

Finally, Bass asserts that the district court should have given him a downward adjustment to his base offense level pursuant to USSG § 3B1.2 because he was a minor participant in the conspiracy. We disagree.

The district court's determination concerning Bass's role in the offense is factual in nature and is reviewed for clear error. United States v. Arnoldt, 947 F.2d 1120, 1128 (4th Cir. 1991). Moreover, the burden was on Bass to show that he was entitled to the adjustment. See United States v. Gordon, 895 F.2d 932, 935 (4th Cir. 1990). We find that Bass failed to meet this burden.

While Bass is correct in his assertion that he was only a minor participant in the overall conspiracy, he certainly was not a minor participant in the events surrounding the attempted possession of 118 pounds of marijuana on April 5, 1995. In fact, the weight of the evidence showed that, as the person attempting to pick up the drugs, he was a primary participant. Since the adjustment is only available to the least culpable member(s) of the group (USSG§ 3B1.2, comment. (n.1)), and since Bass was at least as culpable as Hobart, Essick, and Walser, the district court's decision not to grant the adjustment was not clearly erroneous.

We therefore affirm the orders of the district court in both appeals. We dispense with oral argument because the facts and legal contentions are adequately presented in the material before the court and argument would not aid the decisional process. Bass's "Motion for Review of Full Testimony of Tony Walser, Government Witness, in Support of Appellant's Brief" is granted to the extent that it asks that we review Walser's testimony. The motion is denied as to any additional relief requested.

AFFIRMED